OPINION
Appellant Johnny Otis Griffin appeals a judgment of the Stark County Common Pleas Court convicting him of sexual battery(R.C. 2907.03) and corruption of a minor (R.C.2907.04):
 ASSIGNMENTS OF ERROR I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PRESENT THE DEPOSITION OF DONNA ABBOTT WITHOUT MAKING A FINDING OF UNAVAILABILITY IN VIOLATION OF THE RULES OF EVIDENCE AND THE CONFRONTATION CLAUSE OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 II. WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
 III. WHETHER THE TRIAL COURT ERRED IN NOT ORDERING A MISTRIAL FOLLOWING PROSECUTORIAL MISCONDUCT WHICH DENIED APPELLANT A FAIR TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE OHIO AND UNITED STATES CONSTITUTION.
Between 3:00 and 4:00 in the morning, on December 14, 1999, appellant went to the home of Myishia Elder, a fourteen-year-old girl. Appellant went to the home to visit his friend, Donnyell Chambers, who was the boyfriend of Myishia's mother, Monique Elder. Chambers was not present, but Monique told appellant he could spend the night on the couch. Monique woke up Myishia to get some toilet paper for appellant. When Myishia could not find toilet paper, Monique sent her to the car to retrieve some napkins from a fast food restaurant to use as toilet paper. Myishia also retrieved a blanket for appellant, and went back to bed. Appellant came to Myishia's room and asked her to go downstairs with him. Myishia went downstairs with appellant. Appellant grabbed her arm and pulled her onto the couch. He laid her back on the couch, pulled her underwear aside, rubbed against her, and penetrated her vagina with his penis. When Myishia realized what was happening, she said no. Appellant told her that he would go slow, but she still said no. Finally, appellant asked her if she wanted him to take it out, and she said yes. Myishia then went upstairs, laid down on her bed, took a bath, and told no one what had happened. She left the house for school, and met her brother in the hallway. She told her brother what had happened earlier that morning. He telephoned their uncle, who picked them up from school, and took them home. Myishia went to her grandmother's house. Myishia met with Detective Bobby Grizzard, from the Massillon Police Department. Myishia was transported to Akron Children's Hospital, where she was examined by nurse Donna Abbott. When Abbott examined Myishia, she discovered tissue disruptions and tears on her genital area, as well as bruising. The bruises, disruptions, and tears indicated that Myishia had undergone trauma or force in that area within the past 72 hours. Appellant was indicted on one count of sexual battery, and one count of corruption of a minor. The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant did not testify or put on any evidence during his case-in-chief. However, during Detective Grizzard's testimony, the State introduced two statements previously made by appellant. During a telephone call to Donnyell Chambers, which had been arranged by Detective Grizzard, appellant denied any sexual contact with Myishia. The jury also heard a tape recording of a later statement appellant gave to Detective Grizzard. In the statement, appellant denied penetrating Myishia, but admitted to sexual contact. He claims that he woke up and found Myishia on top of him, rubbing his penis against her vagina. He told Detective Grizzard that when he fully woke up and saw what was happening, he told her to "get the fuck off of me." The jury found appellant guilty on both charges. He was convicted as charged, and sentenced to a determinate term of three years incarceration for sexual battery, to run consecutively with a fourteen month term of incarceration for corruption of a minor. Appellant was also adjudicated to be a sexually oriented offender.
 I
Appellant argues that the court erred in allowing the State to present the deposition testimony of Donna Abbott, without making a finding of unavailability as required by Evid.R. 804. He also claims that the use of the video deposition violated his constitutional right to confront witnesses. On February 28, 2000, the State filed a motion to take a video deposition of Abbott for use at trial. The motion stated that Abbott would be unavailable to testify at trial because she had made prior reservations to attend a national conference on child abuse in Alabama. The motion noted that counsel for appellant, the trial court, and the prosecutor had previously discussed Abbott testifying by taped deposition during pre-trial conferences on February 15, 2000, and February 22, 2000. The motion further stated that trial counsel for appellant did not object to taking the deposition. The motion was granted. Abbott was deposed on March 3, 2000, one week before trial. Appellant and his counsel were both present at the deposition, and counsel cross-examined Abbott. Appellant did not object to playing the videotape for the jury. Before trial, counsel objected to use of the deposition, but not on the basis of hearsay or his right to confront witnesses. The basis for the objection at trial was that shortly after the deposition was recorded, counsel for appellant discovered that Myishia would testify at trial that appellant came to the room to get her. She had told Donna Abbott, and testified before the grand jury, that appellant grabbed her when she came downstairs to get a glass of water. Trial counsel alleged that she would have used this information to cross-examine Abbott. However, Abbott's testimony was directed solely to the results of the physical examination, and Abbott had no personal knowledge of the interaction between appellant and Myishia. The court overruled the objection. As counsel did not object to the deposition on the basis of hearsay or right of confrontation, we must find plain error to reverse. Plain error occurs only when, but for the error, the outcome of the trial would have been otherwise. State v. Nicholas (1993), 66 Ohio St.3d 431. Appellant has not demonstrated that the result of the trial would have been otherwise had the trial court refused to allow Abbott's videotaped testimony. In evidence presented through the testimony of Detective Grizzard, appellant admitted that he had sexual contact with the victim, and that he rubbed his penis in her vaginal area. The question before the jury was whether appellant coerced the victim into such contact, or whether, as claimed by appellant, the contact was initiated by Myishia. Abbott's testimony had no bearing on the issue of coercion, as she merely affirmed from the physical evidence that there was sexual contact. The assignment of error is overruled.
 II
Appellant argues that counsel was ineffective for failing to object to the deposition of Donna Abbott on the basis of right to confront witnesses and hearsay. To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that the performance prejudiced the defense. Strictland v. Washington (1984),466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, cert. denied (1990), 497 U.S. 1011. To demonstrate prejudice, the defendant must show that had counsel not erred, there exists a reasonable probability that the result of the trial would have been different. Id. Prejudice from defective representation is sufficient to justify reversal of a conviction only where the result of a trial was unreliable, or the proceeding was rendered fundamentally unfair by of the performance of trial counsel. State v. Carter (1995),72 Ohio St.3d 545, 558, cert. denied, 516 U.S. 1014, citing Lockhart v. Fretwell (1993), 503 U.S. 364. Appellant has not demonstrated prejudice from counsel's failure to object to admission of the videotaped testimony. Assuming for the sake of argument that an objection would have been successful, appellant has not demonstrated that the result of the proceeding would have been different, or that the proceeding was fundamentally unfair. Appellant and his counsel both attended Abbott's deposition. Counsel had ample opportunity to cross-examine Abbott, and the record reflects that she did cross examine Abbott. Trial counsel objected to some portions of Abbott's testimony, and several portions were redacted by the trial judge. As noted in assignment of error I, the change in Myishia's testimony did not affect counsel's opportunity to cross-examine Abbott, as Abbott expressed no opinion on whether the sexual contact was consensual, and had no personal knowledge of the interaction between appellant and Myishia. The second assignment of error is overruled.
 III
Appellant argues that the prosecutor committed misconduct by failing to disclose exculpatory Grand Jury testimony until two days before trial, by failing to provide trial counsel with photographs until the morning of trial, and by vouching for the victim's credibility in his opening statement. In reviewing a claim of prosecutorial misconduct, we must examine whether the prosecutor's actions were improper, and whether the conduct so prejudiced the defendant as to deny him the right to a fair trial. State v. Lott (1990), 51 Ohio St.3d 160, 165, cert. denied,498 U.S. 1017. Appellant first alleges that the State failed to disclose exculpatory testimony until two days before trial. Myishia testified at trial that she said "no" when appellant persisted in his sexual advances. She did not tell the Grand Jury she had said no to appellant. Further, at trial Myishia testified that appellant came upstairs and got her, while she testified before the Grand Jury that she had gone downstairs for a glass of water when appellant grabbed her arm. The record does not demonstrate that the prosecutor committed misconduct in failing to give appellant's counsel timely notice of this information. The record reflects that Myishia did not talk to the prosecutor between her Grand Jury testimony, and the Friday before trial. The Friday before trial she first told the prosecutor about her change in testimony. The prosecutor notified counsel for appellant of this evidence the next working day, which happened to be the Monday before trial. The record reflects that when he discovered the change, the prosecutor notified appellant's trial counsel in a timely fashion. Appellant next claims that the prosecutor committed misconduct by failing to provide counsel with photographs until the morning of trial. The photographs in question were taken by Detective Grizzard. The photographs were not used by either the State or appellant at trial. The record does not reflect what the photographs depicted, or that they were in any way exculpatory to appellant. Accordingly, on the state of the record, we cannot find prosecutorial misconduct. Finally, appellant argues that in his opening statement, the prosecutor improperly vouched for Myishia's credibility, stating, "But here at trial, she will tell you the truth. She will tell you exactly what happened." Tr. (I) 112-113. The trial court sustained an objection to this statement. At no point after this objection did the prosecutor attempt to vouch for Myishia's testimony. The single comment by the prosecutor, to which an objection was sustained, did not so prejudice appellant as to deny him a fair trial. The third assignment of error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur